# IN THE SUPREME COURT OF CALIFORNIA

EVANGELINA YANEZ FUENTES,

Plaintiff and Respondent,

v.

EMPIRE NISSAN, INC., et al.,

Defendants and Appellants.

S280256

Second Appellate District, Division Eight

B314490

Los Angeles County Superior Court

20STCV35350

---

February 2, 2026

Justice Groban authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Evans, and Stewart[*] concurred.

Chief Justice Guerrero filed a dissenting opinion.

---

[*]    Presiding Justice of the Court of Appeal, First Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

FUENTES v. EMPIRE NISSAN, INC.
S280256


Opinion of the Court by Groban, J.


To establish that a contract is unenforceable because it is unconscionable, the party opposing enforcement must show unfairness both in the procedure by which the contract was formed and the substance of its terms. Here, we consider how to account for illegibility in this analysis. The trial court relied on *Davis v. TWC Dealer Group, Inc*. (2019) 41 Cal.App.5th 662, 674 (*Davis*) to conclude that small, difficult-to-read print supports a finding of substantive unconscionability as well as procedural unconscionability. Disagreeing with *Davis*, the Court of Appeal held that "tiny and unreadable print" is a problem of procedural unconscionability only and should not be double counted as a problem of substantive unconscionability. (*Fuentes v. Empire Nissan*, *Inc*. (2023) 90 Cal.App.5th 919, 930 (*Fuentes*).) We granted review to resolve this conflict. We hold that a contract's format generally is irrelevant to the substantive unconscionability analysis, which focuses on the fairness of the contract's terms, but that courts must closely scrutinize the terms of difficult-to-read contracts for unfairness or one-sidedness. We remand for further consideration in light of our clarification of the law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

When applying to work at Empire Nissan,[1] Evangelina Yanez Fuentes signed a document titled "Applicant Statement and Agreement." The document contains a provision mandating arbitration of "all disputes which may arise out of the employment context." The document also provides that any future modification of its terms must be "in writing and signed by the President of the Company."

The document is printed in a very small font and its text is so blurry and broken up that it is nearly unreadable. Its arbitration provision is a lengthy, densely printed paragraph consisting of complex sentences filled with legal jargon and statutory references. The trial court — quoting our description of a similarly formatted agreement in *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 128 (*Kho*) — described the document as " 'visually impenetrable' " to the point that it " 'challenge[s] the limits of legibility.' "

The document was part of an employment application packet that Empire Nissan gave Fuentes only five minutes to review. Fuentes spent most of this time filling out the employment application form. She was told that the documents in the packet had to do with her employment application, contacting her references, and a drug testing requirement, that she had to complete the documents to work for Empire Nissan, and that she should hurry because the drug testing facility was

---

[1] We refer to appellants Empire Nissan, Inc., Romero Motors Corporation, and Oremor Management & Investment Company collectively as "Empire Nissan."

about to close. She was not offered an opportunity to ask questions. She did not receive a copy.

Fuentes later signed — at Empire Nissan's request — two confidentiality agreements that are substantially identical to each other. The documents provide that Fuentes will not "usurp, for personal gain, any opportunities in the Dealership's line of business." They also prohibit her from using or disclosing confidential information and trade secrets. Each document provides that it "supersedes any and all prior agreements" on the covered subjects. If Fuentes breaches the agreements, they authorize Empire Nissan to seek "any proper injunction" in addition to "any other remedies available . . . at law or in equity." If "legal action is taken to enforce" the agreements, the prevailing party is entitled to attorney fees and costs. There is no signature from Empire Nissan's president on the copy of either of the two confidentiality agreements that appears in the record.

When Fuentes had been working for Empire Nissan for about two and a half years, she went on medical leave for cancer treatment. A year later, Fuentes requested a brief extension of her leave before returning to work. Empire Nissan terminated her employment, and Fuentes filed a complaint in court alleging wrongful discharge and related claims.

Empire Nissan responded with a motion to compel arbitration, which Fuentes opposed. She argued, first, that Empire Nissan had not proved that there was a valid agreement to arbitrate because enforcing the agreement would be contrary to public policy due to the agreement's illegibility and the fact that Empire Nissan gave her so little time to review it. Second,

Fuentes argued that even if there was a valid arbitration agreement, it was unenforceable because it was unconscionable.

The trial court denied Empire Nissan's motion, concluding that the arbitration agreement was unconscionable; it did not reach Fuentes's argument that Empire Nissan had not proved that the arbitration agreement was valid. The court found that the agreement's text was barely legible, it was difficult to understand, and Empire Nissan had not provided Fuentes a meaningful opportunity to review it or negotiate its terms. Based on these findings, the court ruled that Fuentes had established "a very high degree of procedural unconscionability."

The court further ruled that Fuentes had established "a low to moderate degree of substantive unconscionability." Citing our decision in *Kho*, *supra*, 8 Cal.5th 111 and the Court of Appeal's decision in *Davis*, *supra*, 41 Cal.App.5th at page 674, it concluded that the agreement's " 'fine-print terms' " were indicative of substantive unconscionability. The court found further indication of substantive unconscionability in the confidentiality agreements' apparent carveout from the arbitration agreement of unfair competition, trade secret, and confidentiality claims — claims that Empire Nissan, not Fuentes, would bring.

Empire Nissan appealed and the Court of Appeal reversed in a divided opinion. The majority concluded that arguments about illegibility go exclusively to procedural unconscionability — not to substantive unconscionability, as the trial court had concluded. (*Fuentes*, *supra*, 90 Cal.App.5th at p. 929.) In reaching this holding, the court criticized and declined to follow *Davis*, *supra*, 41 Cal.App.5th at page 662,

which held that a similarly formatted arbitration agreement was substantively unconscionable. The *Davis* court based this holding in part on its understanding of *Kho*'s reference to " 'fine-print terms' " as meaning terms " 'so small as to challenge the limits of legibility.' " (See *Davis*, at p. 674.) Relying on the principle that "federal and California law strongly favor arbitration," the majority interpreted the confidentiality agreements as requiring arbitration of claims brought under them. (*Fuentes*, at p. 931.) Based on this interpretation, it held that "there is no substantive unconscionability." (*Id.* at p. 936.) Having so held, the court stated, "we need not and do not address procedural unconscionability." (*Ibid.*)

The dissent would have held that Fuentes had shown the "low degree of substantive unconscionability" required given the high degree of procedural unconscionability involved in the agreement's formation. (*Fuentes, supra,* 90 Cal.App.5th at p. 938 (dis. opn. of Stratton, P. J.).) The dissenting justice noted that in *Kho*, we "appeared to endorse the idea that 'fine-print terms' would support a finding of substantive, as well as procedural, unconscionability." (*Fuentes*, at pp. 938–939 (dis. opn. of Stratton, P. J.).) She observed that if fine print can indicate substantive unconscionability, "then the fine print here, which is so small as to challenge the limits of legibility, qualifies." (*Id.* at p. 939 (dis. opn. of Stratton, P. J.).)

We granted review.

## II. DISCUSSION

Fuentes argues that the arbitration agreement is unenforceable because it is unconscionable and, alternatively, that no valid agreement to arbitrate exists because the agreement's almost illegible format and the way it was

5

presented to her precluded her assent to its terms. We consider each of these arguments in turn. Because the parties do not dispute the trial court's factual findings, our review is de novo. (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 493 (*Ramirez*).)

## A. Unconscionability

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." (*Kho*, *supra*, 8 Cal.5th at p. 125.) We have referred to these two aspects of unconscionability as its "procedural and substantive elements." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).) The procedural element concerns "the circumstances of contract negotiation and formation," particularly "oppression or surprise due to unequal bargaining power." (*Ibid*.) The substantive element, by contrast, concerns "the fairness of an agreement's actual terms," i.e., whether those terms "are overly harsh or one-sided." (*Ibid*.)

"Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree." (*Ramirez*, *supra*, 16 Cal.5th at p. 493.) Courts "apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Ibid*.)

When there is substantial procedural unconscionability, "even a relatively low degree of substantive unconscionability

may suffice to render the agreement unenforceable." (*Kho*, *supra*, 8 Cal.5th at p. 130.) "Substantive terms that, in the abstract, might not support an unconscionability finding take on greater weight when imposed by a procedure that is demonstrably oppressive. Although procedural unconscionability alone does not invalidate a contract, its existence requires courts to closely scrutinize the substantive terms 'to ensure they are not manifestly unfair or one-sided.'" (*Ibid*.) "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 912 (*Sanchez*).)

1. *The Arbitration Agreement Was Imposed with a High Degree of Procedural Unconscionability*

The parties debate the degree of procedural unconscionability present here.

Some procedural unconscionability is present whenever an agreement "is a contract of adhesion, i.e., a 'standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" (*Ramirez*, *supra*, 16 Cal.5th at p. 492.) Although ordinary contracts of adhesion "'"are indispensable facts of modern life that are generally enforced,"'" they pose a "'"'clear danger of oppression and overreaching.'"'" (*Id*. at p. 494.) Because contracts of adhesion are "'not the result of freedom or equality of bargaining,'" we examine them carefully. (*Id*. at p. 492.)

Empire Nissan acknowledges that the agreement here is a contract of adhesion and concedes, as it must, that Fuentes

has proved at least some procedural unconscionability. The question then becomes one of the degree of procedural unconscionability, and by extension, the degree of scrutiny with which we search the substance of the agreement's terms for unfairness and one-sidedness. (*Kho*, *supra*, 8 Cal.5th at p. 126.) A greater degree of procedural unconscionability is present when the circumstances of a contract's formation evince "oppression" or "surprise" beyond that usually present in a contract of adhesion. (*Ibid*.)

" ' "Oppression occurs where a contract involves lack of negotiation and meaningful choice." ' " (*Pinnacle*, *supra*, 55 Cal.4th at p. 247.) "Courts 'must be "particularly attuned" to this danger in the employment setting, where "economic pressure exerted by employers on all but the most sought-after employees may be particularly acute." ' " (*Ramirez*, *supra*, 16 Cal.5th at p. 494.)

Where, as here, a prospective employer directs an applicant to sign an arbitration agreement as part of the employment application process, the economic pressure on the applicant to sign the agreement is particularly high. Empire Nissan did not provide Fuentes a meaningful opportunity to review the agreement or ask questions about it, much less to negotiate its terms. When presented with the application packet, Fuentes was told she should hurry because the drug testing facility was about to close. The company gave her only five minutes to complete the packet. It did not verbally inform her that the packet included an arbitration agreement or provide her a copy of the form after she signed it. These circumstances constitute significant oppression. (*Kho*, *supra*, 8 Cal.5th at pp. 127–128.)

"[S]urprise" is present when an agreement's meaning is difficult to ascertain, such as when " ' "the allegedly unconscionable provision is hidden within a prolix printed form." ' " (*Pinnacle*, *supra*, 55 Cal.4th at p. 247.) Small font size and illegibility can also support a finding of surprise. (*Kho*, *supra*, 8 Cal.5th at p. 128.)

The formation of Fuentes's agreement involved an unusually high degree of surprise. The agreement is printed in a tiny, blurry font, making it very difficult to read. Once the text is deciphered, the agreement's language presents a further barrier to understanding: The reader is confronted with a collection of complex sentences replete with legal jargon and statutory references. As the Court of Appeal observed, the arbitration agreement consists of a "mammoth" paragraph consisting of "something like 900 words," with 35 lines squeezed into "about three vertical inches" of text. (*Fuentes*, *supra*, 90 Cal.App.5th at p. 923.) One sentence, by itself, is 214 words long. The paragraph refers to six different statutes by name, in addition to referring generally to "other applicable state or federal laws or regulations." (*Ibid.*) The paragraph also refers to various government agencies and cites, without explanation, several sections of the California code. (See *Kho*, *supra*, 8 Cal.5th at p. 128 [citing similar phrasing as evidence of surprise].) Taken together, the agreement's difficult-to-read text and prolix language present a substantial barrier to understanding its terms. Indeed, it is hard to understand why an employer would present an important legal agreement to its

employees in such a form.[2]  In relation to a similarly presented arbitration agreement, we observed in *Kho*: "A layperson trying to navigate this block text, printed in tiny font, would not have an easy journey."  (*Kho*, at p. 128.)

Our policy favoring the enforcement of arbitration agreements is rooted in "respect for the parties' mutual and voluntary agreement to resolve disputes by this alternative means."  (*Kho*, *supra*, 8 Cal.5th at p. 129.)  Here, the significant oppression and unusually high degree of surprise involved in the agreement's formation undermine the policies that normally favor enforcement.  The agreement's formatting and the way Empire Nissan presented it to Fuentes "did not promote voluntary or informed agreement to its terms."  (*Ibid*.)  Indeed, even after she signed it, discerning its substance would have involved an investment of effort and expense — obtaining a copy, deciphering its almost illegible print, and hiring a lawyer — that an employee would be unlikely to make until a serious employment dispute arose.

Because the circumstances under which Fuentes signed the agreement involved such a high degree of procedural unconscionability,   even   a   low   degree   of   substantive

---

[2]  Issues around the formatting of employment contracts do not appear to be confined to this case.  (See e.g., *Kho, supra*, 8 Cal.5th at p. 128; *Davis, supra*, 41 Cal.App.5th at pp. 672–673; *Yeomans v. World Financial Group Insurance Agency, Inc.* (N.D.Cal. 2020) 485 F.Supp.3d 1168, 1185.)  The Legislature may wish to consider specifying requirements for employment contracts that promote legibility and comprehensibility, as it has with other types of contracts.  (See, e.g., Code Civ. Proc., § 1295; Bus. & Prof. Code, § 7159, subd. (c); Ins. Code, § 12820, subd. (b)(4); Civ. Code, § 1630.)

unconscionability may render the agreement unenforceable. (*Kho, supra*, 8 Cal.5th at p. 130.)

> 2. *The Court of Appeal Erred in Its Evaluation of Substantive Unconscionability*

Fuentes argues that the arbitration agreement's terms are unfairly one-sided, particularly when viewed through the prism of the high degree of procedural unconscionability present here. Empire Nissan contends that Fuentes has not shown any substantive unconscionability.

The substantive unconscionability analysis "examines the fairness of a contract's terms. This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1532), " 'unduly oppressive' " (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925), " 'so one-sided as to "shock the conscience" ' " (*Pinnacle*[*, supra,*] 55 Cal.4th [at p.] 246), or "unfairly one-sided" (*Little* [*v. Auto Stiegler, Inc.* (2003)] 29 Cal.4th [1064].) All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party." ' " (*Kho, supra*, 8 Cal.5th at pp. 129–130.) "[W]here, as here, the written agreement has been prepared entirely by the employer, it is a 'well established rule of construction' that any ambiguities must be construed against the drafting employer and in favor of the nondrafting employee. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 248 (*Sandquist*).) "Ultimately, the question is whether [the nondrafting employee], through

oppression and surprise, was coerced or misled into making an unfair bargain." (*Kho*, at p. 136.)

a. "Fine-print Terms"

Fuentes first argues that the agreement's tiny print and almost illegible format rendered it substantively unconscionable. In support of this argument, Fuentes relies on *Kho, supra*, 8 Cal.5th at page 130, where we included "fine-print terms" in a list of categories of terms that may be substantively unconscionable because they " ' "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy" ' or attempt to impermissibly alter fundamental legal duties." (*Ibid*.) She notes that in *Davis*, 41 Cal.App.5th at page 674, the Court of Appeal cited this passage from *Kho* to support its conclusion that print " 'so small as to challenge the limits of legibility' " indicated substantive unconscionability.

Empire Nissan counters that our reference to "fine-print terms" in *Kho*, 8 Cal.5th at page 130, is not merely a reference to font size, as the *Davis* court seems to have understood it. That is correct. The expression "fine-print terms" refers to substantively unfair or one-sided terms hidden in a legal document. Such terms may be hidden in a variety of ways, including by printing them in text that is smaller than the surrounding text, burying them in a large block of text, or placing them in a part of the document likely to be overlooked. (*See, e.g., Fisher v. MoneyGram Intern., Inc.* (2021) 66 Cal.App.5th 1084, 1103 [back of document]; *Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1238 [click boxes for electronic signature of lengthy documents].) The common theme is that the terms are both hidden and unfavorable to the nondrafting party. In *Kho*, we cited our decision in *Sonic-*

*Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1145 (*Sonic*), in which we observed that the substantive unconscionability analysis is concerned with terms that are " 'unreasonably favorable to the more powerful party.' " Quoting from Williston on Contracts, we provided a list of examples of such terms that included " 'fine-print terms.' " The Williston treatise observes that contract terms "whether in fine print or legal 'gobbledygook' would hardly be of concern unless they were substantively harmful to the nondrafting party as well." (8 Williston, Contracts (4th ed. 2010) § 18:10.) This context makes clear that we did not mean by our reference to "fine-print terms" in *Kho* that a contractual term could be substantively unconscionable merely because it was printed in a small font.

As to the arbitration agreement at issue here, we agree with Empire Nissan that its tiny print and almost illegible format do not indicate substantive unconscionability. An otherwise fair and mutual term is not made substantively unconscionable by printing it in a manner that makes it difficult to read; the fact that a term is printed in tiny, blurry font does not alone make it harsh, one-sided, or otherwise unreasonably unfair. (See *Kho*, *supra*, 8 Cal.5th at pp. 129–130.) As we have explained, small font size is indicative of procedural unconscionability because it contributes to the element of surprise. Accordingly, small font size can provide a basis for requiring a lesser showing of substantive unconscionability in the sliding scale analysis. But because font size does not affect the substance of an agreement's terms, it cannot render a contractual term substantively unconscionable.

b. Mutuality of Arbitration Mandate

Fuentes next argues that the arbitration agreement is substantively unconscionable because, when considered together with the confidentiality agreements, it is unfairly one-sided. We have held that "[g]iven the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.'" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 117 (*Armendariz*).) The trial court rejected Empire Nissan's business justification argument, and the company has not made any such argument to us. Whether the confidentiality agreements support a finding of substantive unconscionability therefore turns on whether they created a one-sided exemption from arbitration for claims that Empire Nissan would prosecute against Fuentes.

Fuentes interprets the confidentiality agreements as exempting claims brought under them from the arbitration agreement's general mandate that all claims related to her employment must be resolved in arbitration. Fuentes contends that these exemptions are unfair because claims for violations of the confidentiality agreements — which prohibit Fuentes from engaging in unfair competition with Empire Nissan or using or disclosing confidential information and trade secrets obtained through her employment — would only ever be brought by Empire Nissan, never by Fuentes. As Fuentes reads the confidentiality agreements, they allow Empire Nissan to sue her in court, while the arbitration agreement requires Fuentes

to arbitrate all claims she may have against Empire Nissan. Fuentes argues that this renders the agreements, considered together, substantively unconscionable. Empire Nissan, for its part, does not dispute that an exemption for claims brought under the confidentiality agreements would render the arbitration agreement one-sided. But it contends that the confidentiality agreements do not contemplate any particular forum for their enforcement, and that the arbitration agreement — which requires any exemption from it to be signed by Empire Nissan's president — therefore controls.

Our goal in interpreting the confidentiality agreements is to give effect to the parties' " 'mutual intention' " at the time of their signing. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) To discern the parties' intention, we look first to the agreements' text. (*Ibid*.) Nothing in the text of the confidentiality agreements limits Empire Nissan's right to bring its claims under the agreements in court. Indeed, the agreements specify that Empire Nissan may seek any remedies available at law or in equity and that the prevailing party in a "legal action" to enforce the agreements may recover attorney fees and costs. We understand "legal action" in its ordinary, popular sense, which — contrary to the dissent's view — is a proceeding in court, not an arbitration. (Civ. Code, § 1644 [words of a contract are generally to be understood "in their ordinary and popular sense"]; see, e.g., Code Civ. Proc. § 22 ["An action is *an ordinary proceeding in a court of justice . . . .*" (italics added); Black's Law Dict. (12th ed. 2024) [defining "action" to mean a "civil or criminal judicial proceeding; esp. lawsuit"].) Most significantly, the confidentiality agreements make no reference to arbitration. The arbitration agreement, by contrast, consistently uses the words "arbitrate" and

"arbitration" when that is what it means and uses "court" and "action" to refer to judicial proceedings. The absence of any reference to arbitration in the confidentiality agreements suggests that, at the time of their signing, the parties did not intend for claims under them to be subject to mandatory arbitration. (*Waller*, at p. 18.)

The dissent would have us read the absence of a statement that expressly "confers on Empire Nissan the right to pursue claims in court" as an indication that the parties intended to require Empire Nissan to arbitrate its claims. (Dis. opn. of Guerrero, C. J., *post*, at p. 9.) To be sure, the confidentiality agreements could have been more explicit in authorizing Empire Nissan to bring claims for their breach in court. (See, e.g., *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 80 [confidentiality agreement providing: " 'Any breach or threatened breach of this Agreement, therefore may be present[ed] . . . to either a court or binding arbitrator . . .' "].) But we part ways with the dissent because, as a general matter, no agreement is necessary to authorize the parties to a contract to pursue breach of contract actions in court. Arbitration " ' " 'is strictly a matter of consent' " ' " — absent an agreement to arbitrate, *the default rule is that parties may litigate breach of contract claims in court*. (*Ford Motor Warranty Cases* (2025) 17 Cal.5th 1122, 1129.) The confidentiality agreements' silence about the forum for dispute resolution therefore indicates that the parties did not intend disputes to be subject to mandatory arbitration. (See *ibid.* [" 'Arbitration is "a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration" ' "].) At least when read in isolation, the confidentiality agreements reflect an

understanding that Empire Nissan may bring its claims in court.

Reading the confidentiality agreements together with the arbitration agreement, however, reveals an ambiguity concerning whether the parties intended claims under the confidentiality agreements to be subject to mandatory arbitration. (See *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 490–491 [citing Civil Code section 1642 to support construing arbitration and confidentiality agreements executed as part of the same transaction together].) On the one hand, the confidentiality agreements provide that they "supersede[] any and all prior agreements" related to unfair competition, trade secrets, and confidentiality. Such "prior agreements" include the arbitration agreement — which was signed first — to the extent that it applies to claims brought under the confidentiality agreements. The arbitration agreement mandates arbitration of all employment-related disputes. The confidentiality agreements impose new employment-related duties on Fuentes, giving rise to potential claims for breach of those duties. Because the confidentiality agreements contemplate that Empire Nissan will be able to bring such claims in court, they appear to supersede the arbitration agreement as to those claims. On the other hand, the arbitration agreement limits the parties' authority to supersede it by requiring that any future modification of its terms be "in writing and signed by the President of the Company." Reading the agreements together, it is not clear whether the parties intended to supersede the arbitration agreement as to Empire Nissan's potential claims for breach of the confidentiality agreements.

The Court of Appeal — relying on "the principle that the law strongly favors arbitration" — concluded that the arbitration agreement had "supervening force" over the confidentiality agreements because the arbitration agreement "specifies it can be modified only in a writing signed by the company president, and that president never signed any modification." (*Fuentes, supra*, 90 Cal.App.5th at p. 931.) Based on this conclusion, the court held that the confidentiality agreements did not create a one-sided carveout for claims only Empire Nissan would bring because any claim Empire Nissan might bring for breach of the confidentiality agreements would be subject to mandatory arbitration.

The Court of Appeal's reliance on the policy favoring arbitration as an interpretive presumption was misplaced. As we recently reaffirmed in *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, "the policy ' "favoring" ' arbitration is not one of promoting arbitration over litigation, but instead of ensuring that arbitration agreements are not disfavored, i.e., that they are treated like other contracts." (*Id.* at p. 579.) The Court of Appeal contravened this equal treatment principle by relying on "the principle that the law strongly favors arbitration" to support its interpretation of the confidentiality agreements as mandating arbitration. (*Fuentes, supra*, 90 Cal.App.5th at p. 931.) When, as in the present case, a high degree of procedural unconscionability is involved in an arbitration agreement's formation, treating that agreement like other contracts involves closely scrutinizing its terms for unfairness or one-sidedness and resolving ambiguities in meaning against the drafting party. (*Kho, supra*, 8 Cal.5th at p. 130; see *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819, fn. 16 ["The rule requiring the resolution of ambiguities

18

against the drafting party 'applies with peculiar force in the case of a contract of adhesion.' "].)[3]

Applying an interpretive presumption favoring arbitration over litigation, the Court of Appeal implicitly resolved an underlying factual question — whether Empire Nissan's president signed the confidentiality agreements — in favor of Empire Nissan's preferred construction of the agreements. Although the copies of the confidentiality agreements in the record bear only Fuentes's signature, it is fair to assume that Empire Nissan — which drafted the agreements and had Fuentes sign them — agreed to their terms. (See *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 361 ["[I]t is not the presence or absence of a *signature* which is dispositive; it is the presence or absence of evidence of an *agreement*"], original italics.) Empire Nissan did not assert in the trial court that its president had failed to sign the confidentiality agreements. Nor did it argue that the

---

[3] The dissent observes that the "principle of interpretation against the drafter is subordinate to the principle of interpretation in favor of validity." (Dis. opn. of Guerrero, C. J., *post*, at p. 14.) In the dissent's view, the validity presumption supports Empire Nissan's interpretation of the confidentiality agreements because under Fuentes's interpretation, the arbitration agreement is unenforceable. But, as the dissent acknowledges, the validity presumption applies only when a contract can be interpreted in a manner that is "reasonable" and capable of implementation "without violating the intention of the parties." (Civ. Code, § 1643.) Here, as we have observed, the confidentiality agreements reflect the parties' intent to allow Empire Nissan to bring its claims under them in court. It would thus violate the parties' intention to presume that those agreements mandate arbitration in order to uphold the validity of the arbitration agreement.

missing signatures on the copies of the agreements that were before the court meant that the confidentiality agreements could only be enforced in arbitration. As a result, Fuentes had no reason to seek discovery related to the signature question, and the trial court made no factual finding on it. The Court of Appeal's interpretation of the agreements as mandating arbitration of Empire Nissan's claims, which was largely based on its assumption that the "president never signed" the confidentiality agreements, therefore lacks an adequate factual foundation. (*Fuentes, supra*, 90 Cal.App.5th at p. 931.)

We hold that the Court of Appeal erred in applying a presumption in favor of arbitration to conclude that the confidentiality agreements did not create a one-sided carveout for claims only Empire Nissan would bring. In the Court of Appeal's analysis, whether the confidentiality agreements created a substantively unconscionable one-sided carveout turned largely on whether Empire Nissan's president signed the agreements. (*Armendariz, supra*, 24 Cal.4th at p. 117.)[4]

---

[4] Separately, reliance on the missing signature to support Empire Nissan's preferred interpretation may raise concerns about substantive fairness. Relying on the missing signature may permit Empire Nissan — which drafted the agreement — to have it both ways. (See *Sandquist, supra*, 1 Cal.5th at p. 247 [that drafting party " 'may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert' " provides " 'substantial reason for preferring the meaning of the other party' "].) If Empire Nissan brought a claim for breach of the confidentiality agreements in court and Fuentes moved to compel arbitration, Empire Nissan could produce a *signed* copy and claim that it created a carveout from the arbitration agreement. But Empire Nissan could also, as it did here, disclaim its right to bring claims under the confidentiality

Empire Nissan waived any argument that its president did not sign the agreement by failing to make that argument in the trial court, where Fuentes could have contested its factual basis and sought related discovery. However, as the dissent observes, Fuentes has not specifically contested the Court of Appeal's reliance on the missing signature in her briefs to this court.[5] Because the parties have not addressed this issue, we do not decide it here. (See Cal. Rules of Court, rule 8.516(b)(2).)

agreements in court when it would gain an advantage by doing so, i.e., if an employee filed suit in court and argued that the confidentiality agreements' preservation of Empire Nissan's access to a judicial forum renders the arbitration agreement substantively unconscionable. Though the dissent characterizes our decision to remand this case for further consideration of the signature issue as "unjustified," in our view, it would be unjust to permit Empire Nissan to argue for whichever interpretation was more advantageous to it based on a matter over which it has complete control: whether the president signs the confidentiality agreements. (Dis. opn. of Guerrero, C. J., *post*, at p. 4.) The trial court may allow further development of the record, briefing, and argument on this issue on remand.

[5] The dissent contends that it is "unjustified" for us to rely on the lack of a factual foundation for the Court of Appeal's ruling as a basis for reversing its judgment because the parties "have had no chance to respond." (Dis. opn. of Guerrero, C. J., *post*, at p. 5.) But, as explained above, had Empire Nissan raised the lack of signature as a defense, Fuentes could have taken discovery on the issue. The Court of Appeal relied on the lack of signature without a factual record to support that conclusion. In remanding this case to the trial court, we are affording the parties an opportunity to respond, and to litigate this factual issue in an appropriate forum for resolving it. And, as detailed above, we are concluding that the Court of Appeal applied the wrong interpretive framework and allowing the trial court on remand to apply the correct framework. Given this procedural posture, Fuentes is entitled to have the trial court adjudicate the issue on remand.

Nevertheless, given the lack of an adequate factual foundation for the Court of Appeal's interpretation of the confidentiality agreements as requiring Empire Nissan to bring its claims in arbitration — which was the primary basis for its conclusion that the agreements, considered together, are not substantively unconscionable — we conclude that remand is appropriate to allow the trial court to consider these questions and make relevant findings. The trial court may, in its discretion, permit further development of the record and entertain further briefing and argument on remand.[6]

## B. Validity of Arbitration Agreement

Separate and apart from arguing that the arbitration agreement is unenforceable because it is unconscionable,

---

[6] Fuentes also argues that the arbitration agreement is substantively unconscionable because it contains an unlawful waiver of Fuentes's right to bring a representative action under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.) in any forum. (See *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384 [holding that when "an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law"].) Fuentes acknowledges that the Court of Appeal held that she had forfeited this argument, but she contends that we have discretion to reach it anyway. (See *Fuentes*, *supra*, 90 Cal.App.5th at p. 935.) Empire Nissan does not contest our discretion to reach the argument or the unlawfulness of the PAGA waiver; instead, it argues that the arbitration agreement's language should be reformed or restricted to preserve the enforceability of the balance of the arbitration agreement. We recently clarified the analytical framework for addressing questions of this nature in *Ramirez*, *supra*, 16 Cal.5th at pages 516–517. On remand, the trial court may, in its discretion, allow briefing on these questions.

Fuentes — supported by amicus curiae Public Justice — argues that the written arbitration agreement did not give rise to a valid contract because the agreement's formatting and how it was presented to her precluded her assent to its terms. (See *Domestic Linen Supply Co., Inc. v. L J T Flowers, Inc.* (2020) 58 Cal.App.5th 180, 182, 185 [no agreement to arbitrate where agreement hidden in tiny print on reverse side of signature page]; *Windsor Mills, Inc. v. Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987, 994 [no agreement to arbitrate where arbitration provision was in small, inconspicuous print and plaintiff was not advised of its existence].)

Empire Nissan contends that Fuentes waived this argument by not contesting the trial court's ruling that an agreement to arbitrate exists. We disagree. It is true that Fuentes did not contest that ruling. But the ruling was no more than a determination that Empire Nissan's motion to compel arbitration had satisfied the pleading requirement set out in California Rules of Court, rule 3.1330, which requires a motion to compel arbitration to state "the provisions of the written agreement and the paragraph that provides for arbitration." Fuentes did not waive her argument that she did not assent to the arbitration agreement by acknowledging that Empire Nissan's motion adequately pleaded the terms of the arbitration agreement in its motion to compel arbitration.

Indeed, Fuentes challenged the existence of an enforceable contract in the trial court, arguing that the arbitration agreement was invalid and that enforcing it would be contrary to public policy due to its "illegible" formatting and the fact that she "had less than five minutes to read the entire document prior to signing it." She contended that the "procedures and tactics" Empire Nissan used to get her to sign the agreement

"preclude formation of a valid contract." The trial court expressly declined to address these arguments because it concluded that the agreement was unconscionable. The court observed, however, that "the Court of Appeal has raised public policy concerns with enforcing contract provisions containing small, illegible text." (See *Celli v. Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 521.)[7]

Although Fuentes did not waive her argument that the written agreement did not give rise to a valid contract, we

---

[7] The dissent highlights a difference in emphasis between Fuentes's arguments in the trial court and her arguments in our court and asserts, based on this difference, that Fuentes has waived the arguments she makes in our court. (Dis. opn. of Guerrero, C. J., *post*, at pp. 23–25.) We disagree. We do not find waiver, as the dissent would, based on the fact that Fuentes framed her argument in the trial court as concerning whether Empire Nissan's conduct precludes the agreement's " 'enforcement,' " rather than framing the argument as concerning whether Empire Nissan's conduct rendered the agreement invalid. (*Id.* at p. 24.) We also do not agree that Fuentes waived her argument because she focused on public policy grounds instead of arguing that she "could not or did not assent" to the agreement. (*Id.* at p. 24.) The essence of her arguments in the trial court and before us is the same: Fuentes contends that the arbitration agreement is invalid and should not be enforced because of its nearly illegible formatting and the fact that she was given inadequate opportunity to review it. Indeed, as the dissent acknowledges, Fuentes briefly argued in the trial court that these factors "*preclude formation* of a valid contract" (emphasis added) — the very sort of language the dissent contends is necessary to preserve the assent-focused argument that she made to us. Given this posture, it would be "flawed and unjustified" *not* to remand this case to the trial court to permit it to rule on this issue. (*Id.* at p. 4.)

decline to reach it. Because the trial court did not rule on the argument, it is not properly before us.[8]

The argument was also not properly before the Court of Appeal, which nevertheless directed the trial court to grant Empire Nissan's motion to compel arbitration, implicitly ruling that the trial court could not consider the agreement's validity.[9] This was error.

---

[8] The dissent observes that Fuentes has not challenged the Court of Appeal's dispositional language. (Dis. opn. of Guerrero, C. J., *post*, at p. 17.) The dissent contends that by relying on the Court of Appeal's dispositional error as a basis for remand, our opinion "runs afoul of Government Code section 68081 and applicable rules of court" (dis. opn. at p. 23) as well as "fundamental fairness" (*id*. at p. 17). The dissent is correct that Fuentes has not specifically challenged the Court of Appeal's dispositional language, but she *has* challenged its disposition: She urges us to reverse the judgment of the Court of Appeal. We agree with the dissent that it would be improper for us to render a decision on a substantive issue the parties had not had an opportunity to brief. (Dis. opn. at p. 21, citing Gov. Code, § 68081 & Rule 8.516(b)(2).) But there is a difference between a decision on the merits and a decision to remand: The disposition is not, by itself, a substantive issue and the parties *have* briefed the substantive grounds for reversal. It does not contravene Government Code section 68081, or the rules of court (or "fundamental fairness") to allow the trial court to consider on remand an argument that it declined to reach because it ruled on a different ground.

[9] Contrary to the dissent's assertion, Fuentes has not conceded that this argument was raised for the first time in her briefing in this court. (Dis. opn. of Guerrero, C. J., *post*, at p. 25, fn. 7.) While Fuentes invoked the rule that pure questions of law may be asserted for the first time on appeal, she did not concede that she failed to raise the issue below or that it was not fairly included in her petition for review.

The trial court may consider the parties' arguments concerning whether the agreement gave rise to a valid contract on remand. In light of our clarification that arguments about font size and formatting are not relevant to substantive unconscionability, the trial court may, in its discretion, allow the parties to submit additional briefing on the relationship between legibility and mutual assent. We express no view on this subject.

## III. CONCLUSION

In sum, we agree with the Court of Appeal that the trial court erred in relying on the arbitration agreement's illegibility to support a finding of substantive unconscionability. A contract's legibility generally does not affect the substance of its terms.

Nevertheless, we hold that the Court of Appeal erred in two ways. First, it erred by relying on a presumption in favor of arbitration to conclude that the agreement's terms were not substantively unconscionable, while declining to rule on whether the agreement was procedurally unconscionable. (*Fuentes*, *supra*, 90 Cal.App.5th at p. 931.) The court should instead have treated the arbitration agreement like any other contract and closely scrutinized the agreement's terms for unfairness or one-sidedness, given the high degree of procedural unconscionability, and construed any ambiguous provisions against Empire Nissan, as the drafting party. (*Kho*, *supra*, 8 Cal.5th at p. 130; *Sandquist*, *supra*, 1 Cal.5th at p. 248.) Second, the court erred by directing the trial court to grant Empire Nissan's motion to compel arbitration rather than permitting the trial court to consider on remand Fuentes's argument that the written agreement did not give rise to a valid

contract.  For these reasons, we reverse the judgment of the Court of Appeal and remand with directions that the case be returned to the trial court for further proceedings consistent with our decision.

**GROBAN, J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**EVANS, J.**
**STEWART, J.**[*]

---

[*] Presiding Justice of the Court of Appeal, First Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

FUENTES v. EMPIRE NISSAN, INC.

S280256


Dissenting Opinion by Chief Justice Guerrero


Plaintiff Evangelina Yanez Fuentes and her employer Empire Nissan, Inc. (Empire Nissan) agreed by contract that "any claim, dispute, and/or controversy that either party may have against one another . . . shall be submitted to and determined exclusively by binding arbitration." They further agreed that the contract could not be modified except by written agreement signed by Empire Nissan's president or majority owner. Later, Fuentes signed two confidentiality agreements, which were substantially identical and covered "the secrecy, use and disclosure" of Empire Nissan's confidential information. The agreements in the appellate record are not signed by Empire Nissan's president or majority owner.

The majority speculates that the confidentiality agreements could nonetheless have been signed or approved by the required person, and it holds that remand is required to address this "underlying factual question." (Maj. opn., *ante*, at p. 19.) The majority's speculation has no basis in the record or the parties' briefing, which nowhere mentions the possibility of an unresolved factual dispute. It contravenes basic appellate procedure — and fundamental fairness — to reverse on this basis.

Moreover, even on its own terms, this "factual question" does not justify the majority's decision to reverse and remand. The required signature is only consequential if the

1

confidentiality agreements would render the arbitration agreement nonmutual and therefore unconscionable. The majority never addresses this question, even though it was fully briefed by the parties and considered by the Court of Appeal below.

If the majority had engaged in this analysis, it would be compelled to conclude that the confidentiality agreements have no effect on the parties' mutual agreement to arbitrate, regardless of whether they were signed or not. Based on their plain language, and construed in accordance with settled rules of contract interpretation, the confidentiality agreements do not confer any right on Empire Nissan to proceed in court, in contravention of the parties' earlier agreement to arbitrate. The majority cites language in the agreements confirming Empire Nissan's right to seek remedies "at law or in equity." (Maj. opn., *ante*, at p. 15.) But it is black letter law that an arbitrator has the power to order legal and equitable remedies, including final injunctions, in his or her award. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 390–391 (*Advanced Micro Devices*); *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 278 (*O'Hare*).) The agreements' bare reference to these remedies does not imply the right to seek them *in court*. The majority also cites language conferring the right to attorney fees on a prevailing party in the event of " 'legal action' " to enforce the agreements. (Maj. opn., *ante*, at p. 15.) But this language, too, does not say anything about Empire Nissan's ability to pursue claims in court, in contravention of the arbitration agreement. (See *Lombardo v. Gramercy Court* (2024) 107 Cal.App.5th 1028, 1035 (*Lombardo*) [arbitration agreement determined how plaintiff could "pursue legal action against defendant"].) Finally, even if the confidentiality

agreements created some ambiguity regarding Empire Nissan's right to seek relief in court, any such ambiguity must be resolved in favor of the agreements' validity, i.e., in favor of arbitration. (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 507 (*Ramirez*).)

Separately, the majority holds that reversal and remand is justified because the Court of Appeal directed the trial court to grant Empire Nissan's motion to compel arbitration, instead of remanding for further proceedings. (Maj. opn., *ante*, at p. 25.) Like the allegedly unresolved "factual question" above, this issue is entirely one of the majority's own creation. Fuentes has never claimed that the Court of Appeal erred by not remanding the matter to consider any remaining arguments. The majority attempts to draw a connection between those arguments and certain arguments raised in this court regarding contract formation and mutual assent. This connection is illusory, since the arguments are not the same. It is also irrelevant to the decision to remand. Fuentes seeks a ruling on the merits of her arguments and does not claim the procedural error the majority finds dispositive. (Cf. Gov. Code, § 68081.)

We granted review in this matter to consider several issues related to substantive unconscionability. The majority considers one — " 'fine-print terms' " — and correctly rejects it. (Maj. opn., *ante*, at pp. 12–13.) But the majority ignores the remainder, preferring instead to remand for further proceedings based on errors neither raised nor briefed by the parties, and in an apparent effort to give Fuentes the opportunity to raise arguments she has clearly forfeited. (See, e.g., maj. opn., *ante*, at p. 22 [required signatures]; *id.* at pp. 20–21, fn. 4 [purposely omitted signatures]; *id.* at p. 22, fn. 6 [representative action waiver]; *id.* at p. 26 [contract formation and mutual assent].)

Because I find the majority's approach flawed and unjustified, I respectfully dissent.

## I. UNCONSCIONABILITY AND MUTUALITY

"An agreement to submit disputes to arbitration 'is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*Kho*).) One generally applicable ground for invalidating a contract is unconscionability. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1145.) "Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911.) The burden of proving unconscionability in this matter therefore falls on Fuentes.

The majority accurately identifies the two elements of unconscionability — procedural and substantive — and confirms that both must be present to invalidate a contract. (Maj. opn., *ante*, at pp. 6–7.) The majority correctly rejects Fuentes's argument that small font size and illegibility can satisfy both elements. As the majority explains, "small font size is indicative of procedural unconscionability because it contributes to the element of surprise. . . . But because font size does not affect an agreement's terms, it cannot render a contractual term substantively unconscionable." (Maj. opn., *ante*, at p. 13.)

Fuentes does not rely solely on the illegibility of the agreement, however. She also argues that the arbitration agreement is nonmutual, and therefore substantively unconscionable, based on language in the separate confidentiality agreements. Her argument assumes that the

confidentiality agreements could modify the arbitration agreement. She does not address the Court of Appeal's point that no modification was possible because the confidentiality agreements do not comply with the arbitration agreement's strict limits on modification. (See *Fuentes v. Empire Nissan, Inc.* (2023) 90 Cal.App.5th 919, 931 (*Fuentes*) ["The arbitration contract has supervening force because it specifies it can be modified only in a writing signed by the company president, and that president never signed any modification"].) As the majority admits, "Fuentes has not specifically contested the Court of Appeal's reliance on the missing signature in her briefs to this court." (Maj. opn., *ante*, at p. 21.)

Fuentes's failure to address this point should undercut her argument, since it was one of the grounds for the Court of Appeal's holding that the arbitration agreement was not substantively unconscionable. (*Fuentes*, *supra*, 90 Cal.App.5th at p. 931.) The majority pursues the opposite course. Despite neither party raising the issue, the majority concludes it was the Court of Appeal that erred by relying on the absence of the president's signature. It asserts that the Court of Appeal's holding "lacks an adequate factual foundation." (Maj. opn., *ante*, at p. 20.) The majority's reliance on this ground is unjustified, particularly since the parties have had no chance to respond.[1]

The majority is also incorrect that the Court of Appeal's holding lacks foundation. The confidentiality agreements in the

---

[1] The majority claims that, in remanding to the trial court, "we are affording the parties an opportunity to respond." (Maj. opn., *ante*, at p. 21, fn. 5.) But the parties have a right to be heard in *this* court, before *this* court takes action and reverses the judgment below.

record demonstrate that Empire Nissan's president has not signed them, and Fuentes has never suggested otherwise. The majority invokes the general rule that a party's agreement, not its signature, is dispositive. (Maj. opn., *ante*, at p. 19.) That general rule has no application here, where the parties' arbitration agreement required any modification to be "in writing and signed" by Empire Nissan's president or majority owner.

Nonetheless, seizing on this "factual question," the majority holds that reversal and remand is appropriate. (Maj. opn., *ante*, at p. 19.) The premise of this holding is that the confidentiality agreements, if signed by the president, would render the arbitration agreement nonmutual and substantively unconscionable. The Court of Appeal considered this question as well, and the parties have fully briefed it, but the majority barely mentions it. The majority briefly examines the confidentiality agreements in isolation, and it claims the existence of the arbitration agreement creates "an ambiguity" (maj. opn., *ante*, at p. 17), but it does not consider whether this ambiguity could be resolved — as the parties urge — without considering the required signature. This lack of engagement is telling. If the majority had examined the confidentiality agreements in context, it would be compelled to conclude that they do not undermine the mutuality of the earlier arbitration agreement.[2]

---

[2] The majority criticizes the Court of Appeal for "relying on 'the principle that the law strongly favors arbitration.'" (Maj. opn., *ante*, at p. 18.) Even assuming the Court of Appeal erred by broadly interpreting that principle, it does not support the

We have held that an arbitration agreement "cannot require 'one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences.' " (*Ramirez, supra,* 16 Cal.5th at p. 495.) " 'Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on "business realities." ' " (*Ibid.*)

As noted, Fuentes contends the arbitration agreement is unconscionable because it requires Fuentes to arbitrate all of her claims against Empire Nissan but, because of the confidentiality agreements, Empire Nissan does not have the same obligation. Empire Nissan disputes that the

_____

majority's decision to reverse and remand for further factual development in the trial court. The majority claims the Court of Appeal used this interpretive principle to "resolve[] an underlying factual question" (maj. opn., *ante*, at p. 19), but it is unclear how a principle of contract interpretation could give rise to a factual finding. The Court of Appeal's view that Empire Nissan's president did not sign the confidentiality agreements is based on the agreements in the record, which are not signed by Empire Nissan's president. These agreements in the record are more than sufficient to support the Court of Appeal's factual determination, and Fuentes has never suggested otherwise.

The majority also criticizes the Court of Appeal for "declining to rule on whether the agreement was procedurally unconscionable." (Maj. opn., *ante*, at p. 26.) But, as the majority recognizes, a finding of unconscionability requires both procedural and substantive unconscionability. If an agreement is not substantively unconscionable, a court need not consider procedural unconscionability.

7

confidentiality agreements confer any right to pursue its claims in court, as opposed to arbitration.

To resolve this dispute, we turn to familiar principles of contract interpretation. " 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.]' [Citations.] A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. [Citation.] Courts will not strain to create an ambiguity where none exists." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18–19 (*Waller*).)

" 'The mere fact that a word or phrase . . . may have multiple meanings does not create an ambiguity.' [Citation.] Rather, the meaning of the word or phrase must be considered in light of its context." (*Yahoo Inc. v. National Union Fire Ins. Co. etc.* (2022) 14 Cal.5th 58, 69.) Where, as here, the parties execute separate written contracts relating to the same subject matter, the context includes all such contracts, which should be construed together. (*Chern v. Bank of America* (1976) 15 Cal.3d 866, 874; see Civ. Code, § 1642.)

Fuentes's argument fails for the simple reason that nothing in the plain language of the confidentiality agreements

confers on Empire Nissan the right to pursue claims in court. The arbitration agreement imposes a fully mutual arbitration obligation. It provides that "any claim, dispute, and/or controversy that either party may have against one another . . . shall be submitted to and determined exclusively by binding arbitration." Fuentes contends that the later confidentiality agreements "provide a carve out for certain of Empire Nissan's claims." But the plain meaning of the language cited by Fuentes reflects no such carve out.

First, Fuentes cites language in the confidentiality agreements allowing Empire Nissan to seek injunctive relief. Conspicuously absent, however, is any language allowing Empire Nissan to seek injunctive relief *in court*. (Cf. *Carmona v. Lincoln Millenium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 86 [finding a lack of mutuality where an agreement allowed an employer to seek relief from " 'either a court or binding arbitrator' "].) Nor does the language confer such a right by implication. An arbitrator has the power to order an injunction (*O'Hare*, *supra*, 107 Cal.App.4th at p. 278), and any party to an arbitration agreement may seek a preliminary injunction in court (Code Civ. Proc., § 1281.8, subd. (b)). As such, this language does not affect or undermine the bilateral obligation to arbitrate in the arbitration agreement. It is not evidence of one-sidedness.

Second, Fuentes cites the confidentiality agreements' severability clause, which refers to a "court of competent jurisdiction." The clause provides, in relevant part, "Each provision of this Agreement is intended to be severable. If any court of competent jurisdiction determines that one or more of the provisions of this Agreement, or any part thereof, is or are invalid, illegal or unenforceable, such invalidity, illegality or

unenforceability shall not affect or impair any other provision of this Agreement . . . ." The plain meaning of this language, too, does not confer on Empire Nissan any right to pursue claims in court. It does not say anything about Empire Nissan's claims at all. Indeed, severability clauses commonly refer to a "court of competent jurisdiction," and it is well settled that a court's authority to consider the invalidity or unenforceability of a contract (and the possibility of severance) is fully consistent with an agreement to arbitrate. (See, e.g., *Ramirez, supra,* 16 Cal.5th at p. 514.)

Notably, the majority does not rely on either of the provisions cited by Fuentes. Instead, it assesses the confidentiality agreements as a whole, and "in isolation" from the arbitration agreement, to conclude that the confidentiality agreements would allow Empire Nissan to pursue claims for relief in court. (Maj. opn., *ante,* at p. 16.) But it is irrelevant whether the confidentiality agreements, read in isolation, would allow Empire Nissan to pursue claims for relief in court. No one disputes that they would. The issue is whether the confidentiality agreements *exempt* certain claims from the parties' overall agreement to arbitrate. To determine this question, the confidentiality agreements must be read in the context of the parties' earlier arbitration agreement. The majority fails to undertake this essential task.

The majority cites two specific provisions of the confidentiality agreements that, in the majority's view, "suggest[] that, at the time of their signing, the parties did not intend for claims under [the confidentiality agreements] to be subject to mandatory arbitration." (Maj. opn., *ante,* at p. 16.) Since Fuentes never raised these additional provisions, and Empire Nissan has had no chance to respond, the majority's

reliance on them is suspect. But even setting that hurdle aside, the provisions cited by the majority do not confer any right on Empire Nissan to pursue claims in court.

The first provision states that Empire Nissan may obtain "any proper injunction . . . in addition to any other remedies available to [it] at law or in equity." The majority claims the phrase "at law or in equity" means that Empire Nissan may enforce the confidentiality agreements in court. (Maj. opn., *ante*, at p. 15.) The majority provides no explanation for this claim, so its reasoning is impossible to evaluate. But based on the plain language of the agreements, the reference to law and equity does not confer any right on Empire Nissan to pursue its claims in court. An arbitrator has the power to order legal and equitable remedies, including injunctions. (*Advanced Micro Devices*, *supra*, 9 Cal.4th at pp. 390–391 ["remedies available to a court are only the *minimum* available to an arbitrator"]; accord, *O'Hare*, *supra*, 107 Cal.App.4th at p. 278.) The language at issue does not confer any right on Empire Nissan to pursue such remedies in a non-arbitration forum. Moreover, the phrase "in addition to any other remedies" shows that it is "a general reference to other remedies to which [Empire Nissan] may be entitled, and not an investiture of remedies not otherwise available." (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 451.)

The second provision cited by the majority states, "You agree that if legal action is taken to enforce the terms of this Agreement, the prevailing party in any such action shall be entitled to recover legal cost [*sic*] and fees incurred in the action including, but not limited to, attorney fees." Contrary to the majority's assertion (maj. opn., *ante*, at p. 15), the phrase "legal action" can refer to an arbitration proceeding. (See, e.g.,

11

*Ramirez, supra,* 16 Cal.5th at p. 508 [attorney fee award not available "unless the *arbitrator* finds that the *action* was frivolous, unreasonable, or groundless when brought" (italics added)]; *Lombardo, supra,* 107 Cal.App.5th at p. 1035 [arbitration agreement determined how plaintiff could "pursue legal action against defendant"].)  But even if it referred to an action before the court, the plain meaning of the cited provision confers only the right to seek attorney fees.  In other words, the parties would have agreed that attorney fees are available in a court action, but not otherwise.  (Cf. *Turner v. Schultz* (2009) 175 Cal.App.4th 974, 983 ["defendants' entitlement to attorney fees in this legal action is independent of the outcome of the arbitration of the merits of the underlying dispute"].)  Nothing about this attorney fee provision allows Empire Nissan to pursue claims for relief in court, in contravention of the parties' arbitration agreement.[3]

The majority also generally refers to the confidentiality agreements' silence regarding arbitration.  The majority asserts, "The absence of any reference to arbitration in the confidentiality agreements suggests, at the time of their signing,

---

[3]    Because the confidentiality agreements, properly interpreted, do not allow Empire Nissan to pursue claims for relief in court, the majority's speculation regarding Empire Nissan's ability to "argue for whichever interpretation was more advantageous to it" is misplaced. (Maj. opn., *ante,* at p. 21, fn. 4.)  Regardless of whether Empire Nissan's president signed the confidentiality agreements, they do not confer on Empire Nissan any right to pursue claims for relief in court, in contravention of the parties' earlier arbitration agreement. Thus, the proper interpretation of the agreements does not depend on "a matter over which [Empire Nissan] has complete control." (*Ibid.*)

the parties did not intend for claims under them to be subject to mandatory arbitration." (Maj. opn., *ante*, at p. 16.) This assertion ignores the parties' prior arbitration agreement. Given this prior agreement, something more than silence is required to exempt claims under the confidentiality agreements from arbitration. (See *Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1, 17 ["Where one agreement identifies arbitration as the forum for resolving disputes, and a subsequent agreement omits any reference to such a forum, ' "any doubts must be resolved in favor of arbitration" ' "]; *Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 638 [employment agreement, which "did not specify any forum for resolving any disputes between the parties," did not supersede earlier arbitration agreement].)

The majority allows that the agreements, read together, at least create "an ambiguity" regarding Empire Nissan's ability to pursue claims for relief in court. (Maj. opn., *ante*, at p. 17.) In this context, the majority points out that the confidentiality agreements contain a partial integration clause, which states that they " 'supersede[] any and all prior agreements' related to unfair competition, trade secrets, and confidentiality." (*Ibid.*) The majority asserts that this partial integration clause may impact the earlier arbitration agreement "to the extent that it applies to claims brought under the confidentiality agreements." (*Ibid.*) The majority is incorrect. The partial integration clause does not refer to any "claims," directly or indirectly. Instead, it states, "This is the entire agreement between the Company and you regarding the secrecy, use and disclosure of the Company's Proprietary Information, Trade Secrets and Confidential Information and this Agreement supersedes any and all prior agreements regarding these issues." Thus, the partial

13

integration clause covers "secrecy, use and disclosure" of confidential information — not "claims" based on breach or misappropriation, for example. The plain meaning of the clause does not support any inference that the confidentiality agreements supersede the arbitration agreement on the proper venue for Empire Nissan's claims. It does not create any ambiguity regarding the scope of the parties' arbitration agreement.

But even if the provisions of the confidentiality agreements were ambiguous regarding Empire Nissan's right to pursue claims for relief in court, our precedent — and general principles of contract law — require us to resolve this ambiguity against such a right, if finding such a right would render the agreement unconscionable. "Where a contract is susceptible to two interpretations, one which renders it valid and the other which renders it void, a court should select the interpretation that makes the contract valid." (*Ramirez*, *supra*, 16 Cal.5th at p. 507; accord, *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 682; 11 Williston on Contracts (4th ed. 2025) § 32:11.) We must adopt the interpretation that "eliminates any unconscionability." (*Ramirez*, at p. 507.)

The majority cites — though it does not apply — the interpretive principle that contractual ambiguities should be resolved against the drafting party, here Empire Nissan. (Maj. opn., *ante*, at pp. 11, 18; see *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 248.) Since the majority does not apply this principle or interpret the agreements, the significance of this principle in the majority's analysis is unclear. But it is well settled that the principle of interpretation against the drafter is subordinate to the principle of interpretation in favor of validity. "The rule [of interpretation against the drafter] applies 'only as

a last resort' when the meaning of a provision remains ambiguous after exhausting the ordinary methods of interpretation." (*Lamps Plus, Inc. v. Varela* (2019) 587 U.S. 176, 186.) The principle of interpretation against the drafter is embodied in Civil Code section 1654. That statute provides, "*In cases of uncertainty not removed by the preceding rules*, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." (Civ. Code, § 1654, italics added.) One of the preceding rules referenced in the statute is the principle of interpretation in favor of validity: "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (*Id.*, § 1643.) Thus, the principle of interpretation in favor of validity has priority. Indeed, in *Ramirez*, we interpreted an adhesive arbitration agreement to save its validity and did not invoke the rule of interpretation against the drafter. (*Ramirez*, *supra*, 16 Cal.5th at p. 507; see *id.* at p. 493 [arbitration agreement was "an adhesion contract"].)

The majority appears to suggest that, where there is "a high degree of procedural unconscionability," a court must "resolve[] ambiguities in meaning against the drafting party." (Maj. opn., *ante*, at p. 18.) To the extent this suggestion is intended, the majority cites no authority for the proposition that procedural unconscionability should affect the interpretation of a contract, and I am aware of none. In *Kho*, *supra*, 8 Cal.5th at page 130, we considered the doctrine of unconscionability, not contract interpretation. In *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819, fn. 16, we explained, "The rule requiring the resolution of ambiguities against the drafting party 'applies

with peculiar force in the case of a contract of adhesion.'" We did not suggest that the rule should be applied outside its established bounds, to the exclusion of other rules of contract interpretation. To the contrary, we held that adhesive contracts "are subject to interpretation under established principles." (*Ibid.*)[4]

In sum, under well-settled principles of contract interpretation, the confidentiality agreements do not confer any right on Empire Nissan to pursue claims for relief in court, in contravention of the parties' earlier arbitration agreement. Nothing in the confidentiality agreements contradicts or undermines the parties' fully mutual agreement to arbitrate all disputes between them. It is therefore irrelevant whether Empire Nissan's president or majority owner signed the confidentiality agreements or not. Even if they had signed, it would have no effect on the mutuality of the arbitration agreement itself, and it would not make the agreement unconscionable. The majority is therefore mistaken that any alleged "lack of an adequate factual foundation" undermines the Court of Appeal's unconscionability determination (maj. opn.,

---

[4] The majority further suggests that the presumption in favor of validity may not apply because any allowable interpretation must be "'reasonable' and capable of implementation 'without violating the intention of the parties.'" (Maj. opn., *ante*, at p. 19, fn. 3; see Civ. Code, § 1643.) But if an ambiguity exists, the interpretations underlying the ambiguity are by definition reasonable interpretations of the parties' agreement that are capable of being implemented. (*Waller*, *supra*, 11 Cal.4th at p. 18 [ambiguity exists if contract language is subject to "two or more constructions, both of which are reasonable"].) If one interpretation would "violate the parties' intention" (maj. opn., *ante*, at p. 19, fn. 3), it cannot create an ambiguity.

*ante*, at p. 22), and its decision to reverse and remand lacks any legal or logical basis.

## II.  APPELLATE REVIEW AND ERROR

As a separate and apparently independent ground for reversal, the majority concludes the Court of Appeal erred in its disposition by directing the trial court to order the dispute to arbitration, rather than remanding for consideration of any remaining arguments not previously addressed.  (Maj. opn., *ante*, at p. 25.)   The majority's consideration of this alleged error — and its reversal on that basis — contravenes the primary statute governing the scope of our review and related rules of court.   Fuentes has never argued that the Court of Appeal made such an error, either in her petition for review or in her merits briefing, and Empire Nissan has had no opportunity to respond.  The majority disregards basic appellate procedure and fundamental fairness by raising the issue itself and reversing on this basis.

The majority compounds this mistake by mischaracterizing the arguments that may remain to be addressed.  It correctly notes that Fuentes argues *in this court* that the arbitration agreement was so illegible as to preclude her assent to its terms.  (Maj. opn., *ante*, at p. 23.)   But it incorrectly asserts that Fuentes made the same argument *in the trial court*.  (*Id.* at pp. 23–24.)  She did not.  In fact, Fuentes expressly acknowledges that she made this argument "for the first time" in her opening brief on the merits here, which was itself improper because the issue was not raised in Fuentes's petition for review.  Thus, even if the majority were correct that the matter should be remanded to the trial court to consider any

remaining arguments, Fuentes's argument regarding mutual assent should not be included.

## A. Background

In the trial court, in addition to her unconscionability defense, Fuentes argued that Empire Nissan had not shown "there was an enforceable agreement to arbitrate." This argument had three components: (1) "At the time of signing, the agreement was illegible, and in such small, condensed type that it would be against public policy to enforce." (2) "The Agreement is not mutual. An agreement to arbitrate claims that is worded to obligate only the employee, with no equivalent promise by the employer, is unenforceable for lack of consideration." (3) "The Agreement was superseded by subsequent employment agreements that do not include any arbitration clauses." Despite this framing, only the first appears to describe an argument potentially distinct from unconscionability.

In its order denying Empire Nissan's motion to compel arbitration, the trial court noted that Empire Nissan had submitted a copy of the arbitration agreement and a declaration attesting that Fuentes had signed it. The court found that Empire Nissan had met its burden of alleging the existence of an arbitration agreement. (Cal. Rules of Court, rule 3.1330.)[5] It observed that Fuentes "acknowledges the existence of an arbitration agreement," but she "contends that it is unenforceable."

The trial court found the agreement unenforceable based on unconscionability. It therefore declined to consider Fuentes's

---

[5]     Subsequent rule references are to the California Rules of Court.

alternative argument based on public policy. The court wrote, "Plaintiff argues that public policy precludes the arbitration agreement from being enforced due to its small, illegible print. The court notes that the Court of Appeal has raised public policy concerns with enforcing contract provisions containing small, illegible text." In support, the trial court cited *Celli v. Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 521 (*Celli*).

Empire Nissan appealed. In its opening brief, it requested that the Court of Appeal reverse and remand with directions to grant its motion to compel arbitration. Fuentes did not specifically contest this requested disposition, and she never claimed that she had remaining arguments for the trial court to address. In discussing her trial court opposition, Fuentes mentioned only unconscionability.

The Court of Appeal majority concluded that the agreement was not unconscionable. (*Fuentes*, *supra*, 90 Cal.App.5th at p. 923 (maj. opn. of Wiley, J.).) Its disposition stated, "We reverse and direct the trial court to grant the motion to compel arbitration. We award costs to appellants." (*Id.* at p. 936.) The dissenting opinion would have found the agreement unconscionable, but it did not mention any error in the majority's dispositional language or any outstanding arguments yet to be considered. (*Id.* at pp. 938, 941 (dis. opn. of Stratton, P. J.).) Fuentes did not petition for rehearing.

In her petition for review in this court, Fuentes identified four issues, all of which related to substantive unconscionability. For example, her first issue stated, "Does inclusion by the more powerful, drafting party of arbitration terms that are so small, blurry, and crammed together as to be unreadable, render the agreement 'non-mutual,' insofar as only

the drafting party knows what the agreement's terms are, and therefore substantively unconscionable?" Nowhere in the issues identified for review, or in the petition for review itself, did Fuentes take issue with the Court of Appeal's dispositional language.

In her opening brief on the merits in this court, Fuentes attempted to brief a fifth issue: "Whether a valid contract can form under California law, and specifically, whether there was mutual assent where the material terms of the arbitration were unreadable and hidden in tiny, blurry print, such that the arbitration provision's material terms were known only by that the [*sic*] drafting party?" Fuentes claimed this issue was fairly included in her petition for review because the illegibility of the agreement "goes both to substantive unconscionability and to mutual assent." She did not contend the Court of Appeal erred in its disposition by failing to remand for consideration of this argument or any other.

Empire Nissan disagreed that this fifth issue was fairly included in Fuentes's petition for review. It noted that the phrase "mutual assent" does not appear in the petition. Empire Nissan further contended that Fuentes was bound by the trial court's factual finding that an arbitration agreement had been formed.

In reply, Fuentes disagreed that the trial court had made such a factual finding. She acknowledged, however, that her mutual assent argument was raised for the first time in her opening brief. In a heading, Fuentes argued, "Empire Nissan's waiver argument fails because *arguments raised for the first time in this court* are routinely considered where the issue is purely legal and based on undisputed facts." (Italics added,

boldface and capitalization omitted.) Again, Fuentes did not contend the Court of Appeal erred by failing to remand for consideration of any argument.

## B. Alleged Dispositional Error

As noted, the majority concludes the Court of Appeal erred by directing the trial court to grant Empire Nissan's motion to compel arbitration, rather than remanding the case to the trial court to consider any remaining arguments. (Maj. opn., *ante*, at p. 25.) By raising this argument itself, and reversing on this basis, the majority contravenes the statute governing the scope of our review and applicable rules of court. For example, Government Code section 68081 provides, "Before the Supreme Court . . . renders a decision in a proceeding other than a summary denial of a petition for an extraordinary writ, based upon an issue which was not proposed or briefed by any party to the proceeding, the court shall afford the parties an opportunity to present their views on the matter through supplemental briefing." Similarly, rule 8.516(b)(1) provides, "The Supreme Court may decide any issues that are raised or fairly included in the petition or answer." We may not decide any other issue, no matter how compelling it might seem, without giving the parties "reasonable notice and opportunity to brief and argue it." (Rule 8.516(b)(2).)

Government Code section 68081 and similar rules of court are not mere technicalities. They ensure a baseline level of fairness in appellate proceedings, so that courts do not rely on grounds for reversal that the parties have not had a chance to address. They also ensure that courts have the benefit of the parties' briefing and argument when deciding an issue, so that any risk of error is minimized.

The majority disregards both the letter and the spirit of these provisions. It is evident that Fuentes did not raise any issue regarding the Court of Appeal's dispositional language in her petition for review, nor is it fairly included. The majority does not contend otherwise. Instead, Fuentes challenged the Court of Appeal's unconscionability holding on the merits. Fuentes's opening and reply briefs followed suit. They addressed the merits of Empire Nissan's motion to compel arbitration, and they did not identify any error in the Court of Appeal's dispositional language.

The majority asserts that Fuentes's challenge to the Court of Appeal's unconscionability determination, which provided the basis for its disposition, was sufficient to raise any error in the Court of Appeal's dispositional language. (Maj. opn., *ante*, at p. 25, fn. 8.) It was not. A party's substantive challenge to the judgment of the Court of Appeal does not automatically raise every issue that might affect that judgment. Here, for example, the proper disposition under the circumstances of a given appeal is governed by its own body of law. (See, e.g., 9 Witkin, Cal. Proc. (6th ed. 2021) Appeal, § 903, p. 914 ["If . . . the record clearly shows that only one judgment is proper under the law and undisputed facts and that a new trial would be a waste of effort, that direction is proper"].) It is not a mere subset of the substantive issues a party raises. For example, the Court of Appeal could have been entirely correct in its discussion of the merits (as I believe it was), and it still could have erred by directing the trial court to grant Empire Nissan's motion to compel arbitration in its disposition. The two issues are independent, and one is not fairly included in the other. Indeed, the majority does not rely on Fuentes's briefing in deciding to

22

reverse. It expressly concedes the relevant argument "is not properly before us." (Maj. opn., *ante*, at p. 25.)

The majority claims "there is a difference between a decision on the merits and a decision to remand." (Maj. opn., *ante*, at p. 25, fn. 8.) But the majority *has* rendered a decision on the merits — the merits of the Court of Appeal's dispositional language. It has found error in that language and, on that basis, decided to reverse. Because no party raised any issue regarding the Court of Appeal's dispositional language, the majority runs afoul of Government Code section 68081 and applicable rules of court by considering and deciding this issue without briefing and argument from the parties.

## C. Directions on Remand

Even assuming the Court of Appeal erred by directing the trial court to grant Empire Nissan's motion to compel arbitration, rather than remanding for further proceedings, the majority mischaracterizes the issues that remain. The majority focuses on arguments Fuentes made in this court regarding her ability to assent to the terms of the arbitration agreement, given its formatting and blurry text. It claims that its decision to remand will allow Fuentes to pursue these arguments. (Maj. opn., *ante*, at p. 26.) The majority is incorrect. The arguments Fuentes makes in this court — which she admits she made "for the first time" in her opening brief on the merits — are not the same as the arguments she made in the trial court.[6]

---

[6] Although it does not appear to be dispositive, given the majority's other procedural missteps, the majority's focus on the mutual assent argument is additionally noteworthy because the rules of court require us to disregard it. Fuentes did not raise

In this court, Fuentes argues that she could not or did not assent to the terms of the arbitration agreement. By contrast, in the trial court, Fuentes did not mention mutual assent. She argued that "the agreement's illegibility precludes its enforcement." (Boldface and capitalization omitted.) As this language shows, Fuentes's argument was not about the *existence* of an agreement, but its *enforcement*. Fuentes cited cases where statutes or public policy required certain contractual clauses be clear and conspicuous in order to be enforced, like *Celli*, *supra*, 29 Cal.App.3d 511.

The majority highlights *Celli*. (Maj. opn., *ante*, at p. 24.) But it shows just how starkly Fuentes's current arguments diverge from her trial court arguments. *Celli* expressed skepticism, in dicta, that "public policy in this state would permit judicial enforcement of a [release] provision printed in such small type." (*Celli*, *supra*, 29 Cal.App.3d at p. 521.) There was no question in *Celli* that the parties had assented to the contract. Its point was that the contract should not be enforced on public policy grounds. The trial court's reference to *Celli* does not show that Fuentes made any argument regarding mutual assent below.

The majority also quotes portions of a sentence from Fuentes's trial court opposition, in which she wrote, "The procedures and tactics that Defendant used . . . preclude formation of a valid contract." (See maj. opn., *ante*, at p. 24.) However, this sentence fails to articulate any legal basis that would preclude contract formation, let alone raise an argument

_____

the issue of mutual assent in her petition for review. Instead, she explicitly added it as an additional issue in her opening brief on the merits. This addition was improper. (Rule 8.520(b)(3).)

regarding mutual assent.  Nor does any of the surrounding text provide support for such an argument.  The sentence appears at the end of a section entitled, "The Agreement Defendants' [*sic*] Attempt to Enforce Has Been Superseded by Subsequent Employment Agreements."   (Boldface and underscoring omitted.)  Nothing in this section, including the sentence quoted by the majority, raises any argument regarding mutual assent.  Indeed, aside from the sentence quoted by the majority, the section does not relate to contract formation at all.  The majority presumably sees this sentence as its best evidence that Fuentes raised her mutual assent argument in the trial court.  It is wholly unpersuasive.[7]

Finally, the majority invites the trial court to receive additional briefing "on the relationship between legibility and mutual assent" in light of its "clarification that arguments about font size and formatting are not relevant to substantive unconscionability." (Maj. opn., *ante*, at p. 26.)  This invitation wrongly suggests a connection between substantive unconscionability and mutual assent.  The majority's discussion of substantive unconscionability does not affect the well-established body of law governing mutual assent.  Nor does it affect black letter law that a party may assent to a contract even without being able to read it.  (See, e.g., *Hawkins v. Hawkins*

---

[7]   The majority claims these distinctions merely reflect a "difference in emphasis between Fuentes's arguments in the trial court and her arguments in our court." (Maj. opn., *ante*, at p. 24, fn. 7.)  The majority is incorrect.  A party's assent to a contractual offer and the enforcement of any resulting contract are separate issues, governed by separate bodies of law.  As Fuentes herself admitted, she raised her mutual assent arguments "for the first time" in this court, not the trial court.

(1875) 50 Cal. 558, 560; *Caballero v. Premier Care Simi Valley LLC* (2021) 69 Cal.App.5th 512, 519 [a party's "decision to sign a document he could not read is not a basis for avoiding an arbitration agreement"]; *Windsor Mills, Inc. v. Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987, 992 ["an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains"]; see also 1 Williston on Contracts, *supra,* § 4:19.)   Notwithstanding the majority's unusual invitation, its opinion should not be read as questioning any of these principles.

## III. CONCLUSION

In her petition for review, Fuentes requested that this court address four issues related to substantive unconscionability that, in her view, justified reversing the judgment of the Court of Appeal.  The majority considers just one — " 'fine-print terms' " — and concludes the Court of Appeal was correct.  From there, the majority forges its own path.  It discovers an allegedly unresolved "factual issue" that no party has identified, and it speculates that the issue may be dispositive without actually engaging in any substantive analysis.  The majority goes on to find error in the dispositional language of the Court of Appeal, an issue likewise never raised by any party, and it concludes that this alleged error requires reversal as well.  The majority does not consider the remaining three arguments Fuentes raised in her petition for review.  Instead, it invites the lower courts to consider alternative arguments that Fuentes plainly forfeited.

The majority's approach runs afoul of the statute and court rules governing our review, in addition to basic appellate

26

procedures and fundamental fairness.  It also does a disservice to the parties, who have now litigated this matter for over five years but are no closer to a resolution of their dispute.  If this court had simply addressed the issues in Fuentes's petition for review, we could have made some progress toward that goal.  But the majority has chosen a different course.  I respectfully dissent.

**GUERRERO, C. J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Fuentes v. Empire Nissan, Inc.

---

<u>Procedural Posture</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 90 Cal.App.5th 919
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S280256
**Date Filed:** February 2, 2026

---

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Mel Red Recana

---

**Counsel:**

Fisher & Phillips, John M. Polson, Tyler Rasmussen, Bret Martin, Megan E. Walker and Christopher C. Hoffman for Defendants and Appellants.

Schaerr | Jaffe, Donald M. Falk and Gene C. Schaerr for the Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Defendants and Appellants.

Shegerian & Associates, Carney R. Shegerian, Victoria A. Hane; Javanmardi Law, Peter A. Javanmardi, Marc A. Holmquist; Clarkson Law Firm, Glenn A. Danas, Ashley M. Boulton, Katelyn Leeviraphan; Mossavar Law and Miranda A. Mossavar for Plaintiff and Respondent.

Hannah M. Kieschnick for Public Justice as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Christopher C. Hoffman
Fisher & Phillips LLP
4747 Executive Drive, Suite 1000
San Diego, CA 92121
(858) 597-9600

Glenn A. Danas
Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
(213) 788-4050